UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No.: 3:20-CR-31-KAC-JEM ) |
| ROBERT Z. WHIPPLE, III, | ) ) |
| Defendant. | ) |

## ORDER ON REPORT AND RECOMMENDATION

This criminal case is before the Court for consideration of the Report and Recommendation ("Report") issued by United States Magistrate Judge H. Bruce Guyton, [Doc. 156], recommending that the Court deny Defendant Robert Z. Whipple's motions to suppress evidence and motion to reopen a 2020 suppression hearing, [Docs. 112, 115, 116, 117]. Judge Guyton held a hearing on the motions, [*see* Docs. 131-34, 137], received Defendant's supplemental briefs, [*see* Docs. 145-47], and issued the Report, [Doc. 156], recommending that (1) the Court deny Defendant's motions to suppress evidence because "the use of Defendant's Walmart Pay information, the search of the Defendant's car, and the search of Defendant's cellular telephone all comport with the Fourth Amendment," [*id.* at 39], and (2) deny Defendant's motion "to reopen the July 27, 2020 evidentiary hearing on Defendant's motion to suppress items seized from his hotel room," [*id.*], because it was not warranted in this case, [*id.* at 38]. Defendant raised factual and legal objections to each of the Report's recommendations [*See* Doc. 162]. For the reasons set forth below, the Court **ACCEPTS** the relevant portions of the Report, [Doc. 156], **OVERRULES** Defendant's objections as to those relevant portions, [Doc. 162], and

**DENIES** Defendant's motions to suppress evidence and reopen the 2020 suppression hearing, [Docs. 112, 115, 116, 117].

I.  **Background**

On March 17, 2020, the Grand Jury charged Defendant with bank robbery on or about March 5, 2020 (Count One), March 6, 2020 (Count Two), and March 7, 2020 (Count Three), in violation of 18 U.S.C. § 2113(a) [Doc. 8]. On June 29, 2020, Defendant initially moved to suppress "all evidence obtained following a warrantless search of his hotel room and person that occurred on or about March 7, 2020, and to suppress any and all evidence obtained afterwards which derived from th[at] search" [Doc. 35 at 1]. Defendant asserted that the initial entry into his locked hotel room violated his rights under the Fourth Amendment and, therefore, the "currency and cellular phone seized from his person" at the time of his arrest in the hotel room "were the fruits of [an] illegal entry and must, at a minimum, be suppressed" [*Id.* at 8]. Defendant further asserted that other items that were in plain view in the hotel room at the time of the illegal entry that were later seized after law enforcement obtained a search warrant should also be suppressed [*Id.*]. Finally, Defendant asserted that the evidence discovered upon the execution of a search warrant for Defendant's vehicle, a yellow Dodge Challenger, and cellphone, found on Defendant's person at the time of his arrest, should also be suppressed as fruits of the poisonous tree [Doc. 35 at 8-9]. After thorough consideration of the Parties' briefs and oral argument, [*see* Docs. 35, 41, 43-45], the Magistrate Judge issued a Report and Recommendation, [*see* Doc. 50]. Thereafter, the Court accepted the Report and Recommendation, and denied Defendant's motion to suppress [Doc. 65]. The Court concluded that while the initial entry into Defendant's hotel room violated the Fourth Amendment, the evidence later obtained pursuant to a lawful search warrant would not be

2

Case 3:20-cr-00031-KAC-JEM   Document 183   Filed 08/25/22   Page 2 of 16   PageID #: 1209

suppressed because "the warrant was not prompted by the initial entry, and a neutral magistrate judge would have still issued the search warrant" [*Id.* at 8 ("The Court finds Judge Guyton's conclusion correct that there was an independent source for the evidence.")]. The Court also concluded that, even if the search warrant were ultimately deemed invalid, "the officers had a reasonable, good faith belief in the validity of the warrant" at the time it was executed and, therefore, the Court did not suppress that evidence seized during the execution of the search warrant or subsequent evidence found during the searches of Defendant's vehicle and cellphone [*Id.* at 8-9].

Around the time that the Court denied Defendant's initial motion to suppress, Defendant's relationship with his counsel deteriorated [*See* Docs. 61, 63, 67, 76-91, 95-99]. After due consideration, the Court appointed new counsel for Defendant [*See* Docs. 102]. Through new counsel, Defendant filed four new motions [*See* Docs. 112, 115, 116, 117]. **First**, Defendant moved to suppress "any and all evidence obtained as a result of the unlawful warrantless search of the personal and private data relating to Mr. Whipple's buying habits and identity held by Walmart stores" [Doc. 117 at 1]. **Second**, Defendant moved to "suppress[] any and all evidence obtained as a result of the unlawful warrantless seizure of [Defendant's] automobile" [Doc. 112 at 1]. **Third**, Defendant moved to "suppress any and all evidence obtained as a result of the unlawful search of the contents of [Defendant's] cellular phone" [Doc. 115 at 1]. **Finally**, Defendant moved to "reopen the suppression hearing" held on his initial 2020 suppression motion [Doc. 116 at 1]. After substantial briefing and a hearing, [*see* Docs. 118, 122, 125, 128, 131-32, 137, 145-47], Judge Guyton issued the Report [Doc. 156], to which Defendant objected [Doc. 162; *see also* Doc. 166 (Government's response to Defendant's Objections)].

3

## II. Analysis

### A. Legal Standard

Under 28 U.S.C. § 636(b)(1), "[a] judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). "The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.* If a timely objection is made under Section 636(b)(1)(C) and that objection is not "frivolous, conclusive[,] or general," *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986), "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which [the] objection is made," 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim P. 59(b)(3) ("district judge must consider de novo any objection to the magistrate judge's recommendation"). However, the Court need not engage in de novo review of undisputed portions of the Report. *See Mira*, 806 F.2d at 637.

### B. Propriety of Obtaining the "Purchasing Data Obtained from Walmart"

Defendant filed specific objections seeking de novo review of the Report's findings, application of law, and recommendations regarding the Report's (1) "find[ing] that the subpoena to Walmart Pay for records of a particular transaction and identification of the purchaser was reasonable in scope and does not run afoul of the Fourth Amendment," [Doc. 156 at 22], and (2) recommendation that the Court deny "Defendant's motion to suppress evidence obtained from the grand jury subpoena to Walmart Pay" [*Id.* at 23]. *See* 28 U.S.C. § 636(b)(1)(C); *Mira*, 805 F.2d at 637; Fed. R. Crim. P. 59(b)(3). Defendant also "objects to the factual finding that the subpoena was 'narrowly drawn'" [Doc. 162 at 10 (citing Doc. 156 at 22)]. In addition, as to the Report's legal analysis, Defendant asserts that the Report improperly "focuses on the information

4

which was actually turned over" rather than "what the search *could have* revealed, [*id.* at 8 (emphasis in original)], and that the information that "could have been accessed . . . was of such a character that a warrant was required," [*id.* at 9]. Defendant also asserts that the Report erred by "analogiz[ing] this [case] to traditional banking cases" involving commercial transactions because "much has changed in the world since 1976," [*id.* at 9], and argues that a warrant was required to access commercial transactions and, if not, the "administrative subpoena" in this case is insufficient, [*id.* at 10].

As to Defendant's factual objection, Defendant argues that "because the subpoena was not presented at the hearing and does not appear in the record . . . there is no proof in the record to support [the] conclusion" "that the subpoena was 'narrowly drawn'" [*Id.* at 10]. The Court overrules Defendant's factual objection because there is evidence in the record to support the finding that "the [grand jury] subpoena to Walmart Pay for records of a particular transaction and identification of the purchaser was reasonable in scope" [*See* Doc. 156 at 22]. Knowing that an individual using the Walmart Pay application purchased "a red rain poncho, markers, and manila envelopes,"[1] [Doc. 156 at 3], days before a series of bank robberies in which "the perpetrator wore a thin red poncho" and "carried a manila envelope with a handwritten demand note," [*id.* at 2-3], "agents sought a United States District Court Grand Jury Subpoena seeking information related to the specific transaction and the Walmart Pay account holder[']s identifying information," [Doc. 118 at 3]. At the suppression hearing, Special Agent Wesley Latham testified that law

---

[1] Testimony at the May 17, 2021 hearing, [*see* Doc. 137], and July 27, 2020 hearing provided evidence that law enforcement learned of this information prior to subpoenaing Walmart for the Walmart Pay information associated with the specific transaction, [*see* Doc. 52 at 20-21; *see also* Doc. 137 at 9 (granting Government's unopposed motion to "proffer the transcript for the [July 2020] suppression hearing.")].

enforcement served a grand jury subpoena on Walmart seeking the "customer name associated with a Walmart pay application that was used to purchase items that were used in a bank robbery, or several bank robberies" [Doc. 137 at 11-12]. Agent Latham further testified that the subpoena "asked for transactional data" related to "that specific purchase" and "the information associated with the Walmart pay application that was used to purchase those items" [*Id.* at 12]. Agent Latham stated that he "did not request a general purchase history associated with [the] account" but "requested information specific to that purchase only" [*Id.* at 13]. This is how law enforcement came to identify Mr. Whipple as a suspect in their investigation [*See id.* at 21]. Upon review of the testimony on the record, the Court **OVERRULES** Defendant's factual objection, [*see* Doc. 162 at 10], and **ACCEPTS** the Report's finding that the "subpoena to Walmart . . . was reasonable in scope," [Doc. 156 at 22].

Defendant's legal objections fair no better. The narrow scope of the subpoena here limited what evidence could be revealed as a product of the search. This was not an unbounded search of Defendant's cellphone or even his purchase history through the Walmart Pay application. Rather, "what the search could have revealed" was limited to the receipt from the transaction in question and identifying information of the Walmart Pay account holder who completed the transaction [*See* Doc. 137 at 11-13]. This is the search that the Court must properly assess for reasonableness.

"When an individual 'seeks to preserve something as private,' and his expectations of privacy is 'one that society is prepared to recognize as reasonable,'" "official intrusion into that private sphere generally qualifies as a search and requires a warrant supported by probable cause." *Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018) (quoting *Smith v. Maryland*, 442 U.S. 735, 740 (1979)). However, a person generally "has no legitimate expectation of privacy in

6

information he voluntarily turns over to third parties . . . even if the information is revealed on the assumption that it will be used only for a limited purpose." *Id.* at 2216 (internal quotations omitted). Under the third-party doctrine, the "Government is typically free to obtain such information from the recipient without triggering Fourth Amendment protections." *Id.* Here, following *Carpenter*, the Court considers the Defendant's "act of sharing" his identifying information with Walmart Pay and "'the nature of the particular documents sought' to determine whether 'there is a legitimate expectation of privacy concerning their contents.'" *See id.* at 2219 (quoting *United States v. Miller*, 425 U.S. 435, 442 (1976)).

While "[i]t would be foolish to contend that the degree of privacy secured to citizens by the Fourth Amendment has been entirely unaffected by the advance of technology," the narrowly-tailored subpoena in this case requesting limited information regarding a commercial transaction did not seek information for which there is a legitimate expectation of privacy. *See Kyllo v. United States*, 533 U.S. 27, 33-34 (2001). Defendant argues that this case is akin to *Carpenter* and that *Carpenter* should be extended to cases like this involving transactional data. But the decision in *Carpenter* was narrow—involving cell site location data that tracked an individual's whereabouts at all times without any affirmative act by that individual. The Supreme Court was careful to note that its "decision [in *Carpenter* was] . . . a narrow one" and did "not disturb the application of *Smith* [*v. Maryland*, 442 U.S. 735 (1979),] and [*United States v.*] *Miller*[, 425 U.S. 435 (1976),] or call into question conventional surveillance techniques and tools" or "address other business records." *Carpenter*, 138 S. Ct. at 2220. Here, the subpoena sought "transactional data" related to one "specific purchase" on March 2, 2020 (a receipt) and "the information associated with the

7

Walmart pay application that was used to purchase those items" (identifying information of the purchaser) [Doc. 137 at 12].

Defendant affirmatively chose to utilize the Walmart Pay application during the transaction, thus making the transactional data available to Walmart. He could have used a more anonymized method of payment or completed the transaction in cash. He did not. Instead, Defendant affirmatively used a payment method that revealed his identity to a third-party, and law enforcement lawfully subpoenaed that transactional information from the third-party. Given the "nature of the particular documents sought"—one receipt and identifying information of the Walmart Pay account holder who made the purchase—there is no "legitimate expectation of privacy concerning their contents." *Carpenter*, 138 S. Ct. at 2219.[2] Therefore, the Government was permitted to obtain this information via subpoena without "triggering Fourth Amendment protections" that would necessitate a warrant.[3]

---

[2] As the Report states, "Defendant does not challenge law enforcement's initial investigation at Walmart, from which it learned of the purchase of a red poncho and manilla envelopes at 10:15 a.m., on March 2, 2020, and viewed the surveillance video from that day and time" [Doc. 156 at 21]. The only information sought and revealed from the grand jury subpoena was Defendant's identity and a copy of the March 2 receipt [Doc. 137 at 12-13; *see also* Docs. 118-1, 118-2].

[3] Defendant's assertion that the "subpoena is still insufficient as a consequence of our statutory law" because it did not comply with the requirements of 12 U.S.C. §§ 3405 and 3402 also fails. Section 3402 applies to "financial records" derived from or held by a "financial institution." *See* 12 U.S.C. § 3402; *see also* 12 U.S.C. § 3405 (setting forth specific parameters under which "[a] Government authority may obtain financial records under section 3402(2)"); 3401(2) (defining "financial record[s]"). A "financial institution" is defined as "any office of a bank, savings bank, card issuer . . . , industrial loan company, trust company, savings association, building and loan, or homestead association (including cooperative banks), credit union, or consumer finance institution, located in any State or territory of the United States . . . ." 12 U.S.C. § 3401(1). Defendant has not asserted that Walmart is a "financial institution." Accordingly, the statute that Defendant purports the Government violated does not appear to be applicable to Walmart here.

8

Accordingly, because a warrant was not required, the Court **OVERRULES** Defendant's objections, [*see* Doc. 162], **ADOPTS** the relevant portion of the Report, [Doc. 156], and **DENIES** Defendant's "Motion to Suppress Evidence Obtained from Warrantless Search of Personal and Private Data," [Doc. 117].

### C. Propriety of the Seizure of Defendant's Vehicle

Defendant also filed an objection seeking de novo review of the Report's recommendation that the Court deny Defendant's "Motion to Suppress Evidence Obtained from Warrantless Seizure of Defendant's Automobile" [Doc. 112]. The Report recommends the Court deny Defendant's motion because (1) "law enforcement properly seized the Defendant's car pursuant to the automobile exception," [Doc. 156 at 28], and (2) "the nearly three-day lapse in time between seizing the vehicle on Saturday night and the issuance of a search warrant on Tuesday afternoon was reasonable," [*id.*]. Defendant generally objects to the applicability of the automobile exception here [*See* Doc. 162 at 11]. *See* 28 U.S.C. § 636(b)(1)(C); *Mira*, 805 F.2d at 637; Fed. R. Crim. P. 59(b)(3).

A Fourth Amendment challenge is typically brought "to the subsequent search of the container rather than to its initial seizure by the authorities," but Defendant challenged the initial seizure of his vehicle, which was later searched pursuant to a valid search warrant. *See United States v. Place*, 462 U.S. 696, 700-01 (1983). "If officers have probable cause but have not secured a warrant, the Fourth Amendment permits seizures 'if the exigencies of the circumstances demand it ***or some other recognized exception to the warrant requirement is present***.'" *Hopkins v. Nichols*, 37 F.4th 1110, 1117 (6th Cir. 2022) (quoting *Place*, 462 U.S. at 701) (emphasis added).

9

"Under the so-called automobile exception[,] . . . police may [seize] a vehicle 'without a warrant if their [seizure] is supported by probable cause' to believe that it contains contraband or evidence of a crime." *United States v. Vance*, No. 20-5819/5820, 2021 WL 5133250, *4 (6th Cir. 2021) (quoting *California v. Acevedo*, 500 U.S. 565, 579-80 (1991)); *see also United States v. Stokes*, 742 F. App'x. 947, 950 (6th Cir. 2018). "A warrantless seizure is appropriate where there is probable cause to associate an automobile with criminal activity." *Figetaskis v. City of Cuyahoga Falls*, 112 F. App'x. 393, 394 (6th Cir. 2004) (citing *Autoworld Specialty Cars, Inc. v. United States*, 815 F.2d 386, 398 (6th Cir. 1987)); *see also United States v. Darulis*, 1 F.3d 1242, 1993 WL 264676, *4 (6th Cir. 1993) (table) ("Several Courts, including this one, have recognized that . . . if the existence of probable cause alone justifies the warrantless search of a vehicle parked in a public place, then a warrantless *seizure* of such a vehicle, based only upon probable cause, also falls within the automobile exception" (emphasis in original) (citing *Autoworld*, 815 F.2d at 389)). "Only probable cause is required because 'the automobile exception has no separate exigency requirement.'" *Vance*, 2021 WL 5133250, at * 4 (quoting *Maryland v. Dyson*, 527 U.S. 465, 466-67 (1999)).

Defendant asks the Court to "suppress[] any and all evidence obtained as a result of the unlawful warrantless seizure" of his yellow Dodge Challenger [Doc. 112 at 1].[4] In support, Defendant argues that the automobile exception is not applicable because "law enforcement actually visited the magistrate that night, [and] actually presented the magistrate with a search

---

[4] Defendant argues that law enforcement's initial seizure of the Challenger made the subsequent search pursuant to a warrant possible. This argument necessarily implies that had law enforcement not seized the vehicle, the evidence contained therein would not have later been recovered. This "risk of the item's disappearance" is, in part, why the automobile exception to the warrant requirement exists. *See Place*, 462 U.S. at 701.

10

warrant [for his hotel room], but chose not to get similar permission for the seizure of the car" [Doc. 162 at 11]. Further, Defendant asserts that the affidavit used to secure the warrant for the vehicle merely added a few sentences to the affidavit law enforcement used to secure the warrant for the hotel room [*Id.* at 12]. In his motion, [*see generally* Doc. 112], and objections to the Report, [*see* Doc. 162 at 11-12], Defendant did not assert that the warrant for the vehicle was not supported by probable cause. Instead, he argued that the information needed to obtain the warrant for the vehicle was already available at the time law enforcement secured the warrant for the hotel room and law enforcement should have obtained a warrant for the hotel room and the vehicle on the same night [*See id.* at 12].⁵ But, even if "the government might have had time to secure a warrant to search [and seize] the automobile, there [is] no requirement that it do so" if a proper exception to the warrant requirement applies. *See United States v. Hofstatter*, 8 F.3d 316, 322 (6th Cir. 1993). And law enforcement had probable cause to believe that the vehicle contained evidence of a crime when they seized the vehicle. This then-existing probable cause was later confirmed when a magistrate judge issued a search warrant for the vehicle [*See* Doc. 35-7 at 1].⁶

---

⁵ Defendant does not challenge the sufficiency of the search warrant for the vehicle [*See* Doc. 112]. However, Defendant previously moved the Court to suppress "all resulting evidence" after an unlawful entry into his hotel room, [Doc. 35 at 7], including "the search warrant . . . for . . . the Dodge Challenger" [*id.* at 9]. The Court denied that motion [*See* Docs. 50, 65].

⁶ Law enforcement seized Defendant's vehicle on Saturday night, impounded it, and then secured a search warrant for the vehicle on Tuesday—a "nearly three-day lapse in time" [*See* Doc. 156 at 28]. Defendant's assertion that the "search that was eventually conducted was made possible by the unlawful seizure of the car," [Doc. 112 at 6], further supports the Report's finding that the automobile exception is applicable in this case, [*see* Doc. 156 at 28]. "Where probable cause exists, 'officers may conduct a warrantless search of the vehicle, even after it has been impounded and is in police custody.'" *Vance*, 2021 WL 5133250, *4 (quoting *Michigan v. Thomas*, 458 U.S. 259, 261 (1982) (per curiam)). The reasonableness of a seizure does not "depend upon a reviewing court's assessment of the likelihood . . . that the car would have been driven away, or that its contents would have been tampered with, during the period required for the police to obtain a

11

Case 3:20-cr-00031-KAC-JEM   Document 183   Filed 08/25/22   Page 11 of 16   PageID #: 1218

Even if the automobile exception were inapplicable and law enforcement did not have probable cause to initially impound, or seize, the vehicle, no relevant evidence was recovered when law enforcement impounded Defendant's Challenger. Rather, the relevant evidence was recovered from inside Defendant's vehicle [*See* Docs. 50, 65; *see also* Doc. 35-7]. And that evidence was seized pursuant to a valid warrant issued by a magistrate judge and supported by probable cause that Defendant has not challenged. *See United States v. Leon*, 468 U.S. 897, 923 (1984).

Accordingly, the Court **OVERRULES** Defendant's objection, [*see* Doc. 162], **ADOPTS** the relevant portion of the Report, [Doc. 156], and **DENIES** Defendant's "Motion to Suppress Evidence Obtained from Warrantless Seizure of Defendant's Automobile," [Doc. 112].

**D. Execution of Search Warrant Regarding Defendant's Cellphone**

Defendant also filed factual and legal objections seeking de novo review of the Report's recommendation that the Court deny Defendant's "Motion to Suppress Evidence Obtained from Search of Defendant's Cellular Phone" [Doc. 115]. The Report provided that the search of Defendant's cellphone, pursuant to a search warrant, "began . . . on March 13, 2020" and "that the extraction of the data from the cellphone in November 2020 was a continuation of [that] search," [Doc. 156 at 34], and recommends that the Court deny Defendant's motion, [*id.* at 35]. Defendant asserts that the November 2020 search "accessed different data . . . stored in a different type of memory" on the cellphone and, therefore, "this second search was a new and different search" [Doc. 162 at 13].

---

warrant'" because there is "no separate exigency requirement" to the automobile exception. *Id.* (quoting *Thomas*, 458 U.S. at 261; *Dyson*, 527 U.S. at 466-67).

"A repeated search of an electronic device" that is seized "and permissibly secured by the police as evidence of a crime differs in degree and kind" from the search of a home. *United States v. Castro*, 991 F.3d 961, 968 (6th Cir. 2018). Federal Rule of Criminal Procedure 41(e)(2)(B), related to a warrant seeking electronically stored information, provides that, "[u]nless otherwise specified," "[a] warrant under Rule 41(e)(2)(A)" "authorizes a later review of the media or information consistent with the warrant. The time for executing the warrant in Rule 41(e)(2)(A) and (f)(1)(A) refers to the seizure . . . , and not to any later off-site copying or review." *See* Fed. R. Crim. P. 41(e)(2)(B).

Here, law enforcement seized Defendant's cellphone on March 7, 2020 [Doc. 156 at 1]. The magistrate judge issued a search warrant for the contents of that cellphone on March 10, 2020 [*See* Doc. 115-1 at 1]. By that time and throughout the timeframe in question, Defendant had already "los[t] the device to police custody" and "never regained custody of the phone." *See Castro*, 881 F.3d at 968. The search of Defendant's cellphone began on March 13, 2020 when Forensic Examiner Leyton Adams "conduct[ed] a physical examination of the cellphone," "removed the SIM card and SD card from the cellphone[,] and extracted data from both cards," [Doc. 156 at 30]. In other words, "the magistrate judge signed a warrant authorizing the search of a cellphone already in law enforcement's custody"[7] and "[e]xecution of the warrant occurred when the [cellphone] was removed from its [custodial] location" by Mr. Adams. *See United States v. Cleveland*, 907 F.3d 423, 432 (6th Cir. 2018) ("[T]he seizure of the evidence occurred before the warrant's deadline. Though the significance of that evidence—that is, the incriminating nature of

---

[7] The question of the constitutionality of the initial seizure of Defendant's cellphone is not presently before the Court.

13

the information on the cellphone prior to its seizure—was not discovered until after the seizure, that fact does not make that evidence inadmissible under . . . Rule . . . 41."). Simply put, "the extraction of data from the cellphone in November 2020 was a continuation of the search" that "began . . . on March 13, 2020" within the time period set by the warrant [*See* Doc. 156 at 34]. To conclude otherwise would be to allow law enforcement's lawful, permitted access to cellphone data to be undercut in any case where a password prevents law enforcement from immediately accessing the data it is permitted to seize. That is not the law.

Accordingly, the Court **OVERRULES** Defendant's objections, [*see* Doc. 162], **ADOPTS** the relevant findings in the Report, [Doc. 156], and **DENIES** Defendant's "Motion to Suppress Evidence Obtained from Search of Defendant's Cellular Phone," [Doc. 115].

### E. Propriety of Reopening 2020 Suppression Hearing

Finally, Defendant objects to the Report's (1) finding that "[Special Agent] Hughes's report does not contradict [Special Agent] Leatham's testimony that [Special Agent Leatham] did not notice [relevant] clothing while he was in the Defendant's hotel room and before he left to seek the search warrant," [Doc. 156 at 38], and (2) recommendation that Defendant's Motion to Reopen Suppression Hearing, [Doc. 116], be denied because "permitting the reopening of the July 27, 2020 evidentiary hearing [to] consider[] [Special Agent] Hughes's report would not change the Court's ruling on the Defendant's motion to suppress the evidence seized from the hotel room," [Doc. 156 at 39]. Defendant specifically asserts that (1) he "presented the Court with documentary proof that there was a potential for impeachment of the testimony" of Special Agent Leatham, (2) Defendant "was not able to present this testimony at the first suppression hearing," and (3) Defendant "should

14

not be foreclosed from raising this issue for review by this Honorable Court or on direct appeal" [Doc. 162 at 14].

"The decision to reopen a suppression hearing is left to the sound discretion of the court." *United States v. White*, 455 F. App'x 647, 650 (6th Cir. 2012) (citation omitted). "When considering a motion to reopen, the district court should account for the timeliness of the motion, the character of the proposed testimony, the effect of granting the motion, and most importantly, whether the opposing party will be prejudiced by reopening the record." *See United States v. Holland*, 522 F. App'x 265, 270 (6th Cir. 2013). But, "before the court considers any of these elements, the moving party must offer a good reason for not previously presenting the proposed proof." *Id.*

The Report ably and appropriately considered the relevant factors. Defendant has not presented a sufficient reason to reopen the 2020 suppression hearing, nor has he provided an "explanation of why he could not have presented" the evidence that he now seeks to introduce at the 2020 hearing [Doc. 156 at 38]. Defendant had access to this information at the time of the 2020 suppression hearing [*Id.*]. Acquiring new counsel, who would like to employ a different strategy, is not in itself "a reasonable basis for reopening the record[.]" *See Holland*, 522 F. App'x at 270.

Further, as a substantive matter, reopening the 2020 suppression hearing to permit Defendant to offer evidence of what another special agent saw in the hotel room for the purpose of impeaching Special Agent Latham's statement that he personally did not see those items would not be fruitful [*See* Doc. 156 at 35-37]. The Court previously concluded that, even after excluding the information gained from the entry of the hotel room, the other information in the search warrant

15

affidavit provided "an independent source, supporting the search of the hotel room" [*See id.* at 37]. Defendant's effort to reopen the 2020 suppression hearing to add to the factual record of what was seen at the hotel room would not alter this conclusion [*Id.*]. Thus, the undersigned declines to reopen the 2020 suppression hearing. *See White*, 455 F. App'x at 651.

Accordingly, the Court **OVERRULES** Defendant's objection, [*see* Doc. 162], **ADOPTS** the relevant portion of the Report, [Doc. 156], and **DENIES** Defendant's "Motion to Reopen Suppression Hearing," [Doc. 116].

### III. Conclusion

For the reasons stated above, the Court **OVERRULES** Defendant's "Objections to the Report and Recommendation of the Magistrate Judge," [Doc. 162]; **ACCEPTS** the relevant portions of the "Report and Recommendation," [Doc. 156]; and **DENIES** Defendant's (1) "Motion to Suppress Evidence Obtained from Warrantless Search of Personal and Private Data," [Doc. 117], (2) "Motion to Suppress Evidence Obtained from Warrantless Seizure of Defendant's Automobile," [Doc. 112], (3) "Motion to Suppress Evidence Obtained from Search of Defendant's Cellular Phone," [Doc. 115], and (4) "Motion to Reopen Suppression Hearing," [Doc. 116].

IT IS SO ORDERED.

KATHERINE A. CRYTZER
United States District Judge